# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                 )
MALLA POLLACK,                   )
                                 )
              Plaintiff,         )
                                 )
      v.                         )        Civil Action No. 10-0866 (ABJ)
                                 )
JAMES C. DUFF,                   )
Director of the Administrative Office of  )
the United States Courts, et al.,         )
                                 )
              Defendants.        )
_____)
```

## MEMORANDUM OPINION

Plaintiff Malla Pollack, a resident of Kentucky, was deemed ineligible to apply for a position at the Administrative Office of the United States Courts ("AO") because the job vacancy announcement was restricted to current AO employees and residents of the District of Columbia metropolitan area.  Compl. ¶¶ 4, 13, 16 [Dkt. # 1].  She has filed this action against the AO claiming that the geographical limitation on the pool of applicants violated her constitutional right to travel, the Privileges and Immunities Clause in Article IV, the Fifth Amendment, the Fourteenth Amendment, and "the structure and purpose of the Constitution as a whole."  *Id.* ¶¶ 1, 11–13.

Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative for summary judgment, on November 1, 2011.  Defs.' Mot. to Dismiss [Dkt. # 9] ("Defs.' Mot."); Mem. of P. & A. [Dkt. # 9] ("Defs.' Mem.").  On August 24, 2011, the Court granted defendants' motion to dismiss for lack of subject matter jurisdiction, on the grounds that the government had not waived its sovereign immunity from

suit.  Mem. Op. [Dkt. # 18].  In light of its ruling, the Court did not go on to address the merits of

the dispute, and it did not reach defendants' alternative jurisdictional argument.

Plaintiff appealed the dismissal of her case.  Notice of Appeal [Dkt. # 19].  The U.S.

Court of Appeals for the District of Columbia Circuit ruled that the AO was not immune, and it

remanded the case for further proceedings.  Mandate and Judgment [Dkt. # 22].  Since the

motion to dismiss was fully briefed by the parties,[1] that motion is now ripe for decision.  The

Court finds that the AO's decision to limit the geographic area of consideration for certain of its

job vacancies did not offend the Constitution.  The AO's action did not prevent, deter, impede,

burden, or penalize travel by the plaintiff to or from Kentucky, the District of Columbia, or

anywhere else.

## BACKGROUND

Plaintiff Malla Pollack, an attorney who lives in Kentucky, applied for a job as an

attorney with the AO.  Compl. ¶¶ 4, 11.  The job announcement at issue, number 10-OFS-

300782, was open to the following applicants:  "Judiciary wide and All Sources – Washington

Metropolitan Area."  *Id.* ¶¶ 10–12.  This meant that the AO would consider current judiciary

employees regardless of their location, and it would consider non-judiciary employees not

claiming a preference entitlement located in the Washington, D.C. metropolitan area.  *Id.* ¶¶ 11,

12, 16.  Pollack applied for the position as a non-judiciary employee, and the AO rejected the

application because she does not reside within the Washington metropolitan area.  *Id.* ¶¶ 11, 13.

Pollack sued, claiming that the AO's limitation of the applicant pool to a geographic area

---

1       *See* Defs.' Mot. and Defs.' Mem.; Pl.'s Opp. to Defs.' Mot. to Dismiss & Pl.'s Cross
Mot. for an Order Requiring Resp. to Pl.'s Disc. Reqs. [Dkt. # 10] ("Pl.'s Opp."); Consolidated
Reply in Supp. of Defs.' Mot. to Dismiss and Opp. to Pl.'s Cross Mot. for a Disc. Order [Dkt. #
13] ("Defs.' Reply"); Pl.'s Reply in Supp. of Pl.'s Cross Mot. for an Order Requiring Resp. to
Pl.'s Disc. Reqs. and (If the Ct. So Orders) Sur-Reply to Defs.' Mot. to Dismiss [Dkt. # 16].

violated her constitutional right to travel.  *Id.* ¶ 1.  Aside from claiming sovereign immunity, defendants moved to dismiss for failure to state a claim, or in the alternative for summary judgment, because the geographic limitation in the AO's job announcement does not violate the Constitution.  Defs.' Mem. at 16–23.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### I.  Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement, . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye*

*v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms.*, *Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679, quoting Fed. R. Civ. Pro. 8(a)(2). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 678, quoting *Twombly*, 550 U.S. at 555, and "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

### III. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

### I.  The AO Personnel Act

The Administrative Office of the United States Courts Personnel Act of 1990 ("AO Personnel Act") governs employment matters within the federal judiciary and authorizes the judiciary to manage its own personnel matters.  *In re Golinski*, 587 F.3d 956, 962 & n.6 (9th Cir. 2009).  Congress passed the Act in 1990 to remove control over employment decisions of the judiciary from the executive branch.  *Id.* at 962 n.6 (noting that before the Act, the United States courts were mostly free of Executive Branch supervision except in the area of personnel matters, and Congress passed the Act to "correct that asymmetry").  The Act requires the Director of the AO to establish a personnel management system for the Administrative Office that provides for the appointment, pay, promotion, and assignment of all employees on the basis of merit. Administrative Office of the United States Courts Personnel Act of 1990, Pub. L. No. 101-474, § 3(a), 104 Stat. 1097 (1990) (appearing in notes to 28 U.S.C. § 602).

Section 3(a)(7) of the AO Personnel Act requires the judiciary's personnel management system to "include the principles set forth in section 2301(b) of title 5, United States Code." That provision requires that:

> [r]ecruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.

5 U.S.C. § 2301(b)(1) (2012).

The AO implemented this requirement through its Merit Recruitment Plan.  Decl. of Cheri Thompson Reid [Dkt. # 9-1] ("Reid Decl."), Ex. 1 to Defs.' Mot. ¶ 5.  The Merit Recruitment Plan gives an AO official who has a vacancy to fill discretion to define the

geographic "area of consideration" from which the AO will accept candidates. *Id.*  Specifically, Section E of the Merit Recruitment Plan states that the "area of consideration must be large enough to attract a reasonable number of qualified candidates to provide fair and open competition for the position. . . . The minimum area of consideration is AO permanent status employees within a geographic location." *Id.,* quoting Human Resources Manual, Chap. II, Subch. D, Sec. E.  According to the AO, a selecting official may choose to limit an area of consideration for a particular vacancy because "the larger the applicant pool the greater the expenditure of resources may be" and a smaller area of consideration "will attract a reasonable number of qualified candidates to provide fair and open competition for the position." *Id.*

The AO Personnel Act also governs employment complaints by judiciary employees and applicants.  It provides that the AO's personnel system must "prohibit discrimination on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition."  AO Personnel Act § 3(a)(9).  It also requires the AO to establish regulations that provide procedures for resolving discrimination complaints by employees and applicants. *Id.*  Section 3(g) of the Act states:

> Nothing in this Act shall be construed to abolish or diminish any right or remedy granted to employees in the Administrative Office by any law prohibiting discrimination in Federal employment on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition, except that, with respect to any such employees and applicants for employment, any authority granted under any such law to the Equal Employment Opportunity Commission, the Office of Personnel Management, the Merit Systems Protection Board, or any other agency in the executive branch, shall be exercised by the Administrative Office.

*Id.* § 3(g).

In response to this requirement, the AO created the Fair Employment Practices System ("FEPS"), which provides for "the prompt, fair, and impartial resolution of allegations of discrimination" by AO employees and applicants. *See* Administrative Office of the United States Courts, 2 AO Manual § 120.20 [Dkt. # 9-2], Ex. 2 to Defs.' Mot. FEPS requires the AO to establish a personnel system prohibiting discrimination of the basis of "race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition," including providing for the "prompt, fair, and impartial resolution of allegations of discrimination." *Id.* §§ 120.10 (Purpose), 120.20 (Scope).

## II. Judicial Review

Before addressing the merits of Pollack's constitutional claim, the Court notes that its ruling of August 24, 2011 "rested solely on the ground that the defendants have sovereign immunity," but that on appeal, defendants urged the appeals court to rule "on the alternative ground that the [AO Personnel Act] evidences a clear congressional intention to preclude judicial review" of Pollack's claims. *Pollack v. Hogan*, 703 F.3d 117, 121 (D.C. Cir. 2012). Defendants' motion to dismiss for lack of jurisdiction did not address this argument at length, but it did assert that FEPS is the sole source of any remedy available to plaintiff. Defs.' Mem. at 16. In her opposition, plaintiff responded that Congress must use clear statutory language if it seeks to bar judicial review of a constitutional claim, and that there is no statement of Congressional intent to do so in this instance. Pl.'s Opp. at 5 & n.2, quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988) ("where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear").

The AO Personnel Act prohibits "discrimination on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition." AO

8

Personnel Act § 3(a)(9).   FEPS is the AO's procedural mechanism for resolving complaints alleging those sorts of discrimination.   Ex. 2 to Defs.' Mot. § 120.10.   Defendants argue that Section 3(g) of the Act reflects that Congress intended FEPS to be the exclusive resolution procedure for discrimination claims by AO employees and applicants.   Defs.' Mem. at 4–5, quoting AO Personnel Act § 3(g) (granting the AO authority to exercise authority "granted under any such law to the Equal Employment Opportunity Commission, the Office of Personnel Management, the Merit Systems Protection Board, or any other agency in the executive branch" to address discrimination claims as set forth in the statute).   Defendants also argue that the fact a complaining employee or applicant does not have the right to appeal a final decision by the AO under FEPS supports their position that Pollack cannot sue.   Defs.' Mem. at 6 n.5, quoting Ex. 2 to Defs.' Mot., § 120.100(1)(b).

But Pollack is not protesting the sort of discrimination covered by the statute.   She does not claim discrimination "on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition."   AO Personnel Act § 3(a)(9).   Rather, she claims the AO discriminated against her as a resident of Kentucky and, in doing so, violated her constitutional right to travel.   Thus, it does not appear that Section 3(g) and FEPS apply in this case.   The Court need not resolve this issue, however, because it ultimately concludes that the AO's geographic limitation in job announcement number 10-OFS-300782 does not violate Pollack's constitutional right to travel.

### III. The AO Does Not Violate Pollack's Constitutional Right to Travel by Limiting the Area of Consideration

Pollack contends that by limiting the area of consideration for the disputed job announcement to the Washington, D.C. metropolitan area, the AO violated a constitutional right to travel that is embodied in the Privileges and Immunities Clause of Article IV, the Fifth

Amendment, the Fourteenth Amendment, and/or "the structure and purpose of the Constitution as a whole." Compl. ¶ 1. She explains that the complaint "mentions" all of those provisions because "the United States Supreme Court has repeatedly shifted its analysis of the constitutional right to travel," and she does not "wish to plead herself out of court by unnecessarily tying her complaint to any one element of the Constitution." Pl.'s Opp. at 9.

There is no dispute that the right to travel is a "virtually unconditional personal right, guaranteed by the Constitution to us all." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (internal citations and quotation marks omitted); *see also* Defs.' Mem. at 16; Pl.'s Opp. at 8. The Supreme Court has addressed the right to travel in various contexts over nearly 150 years of jurisprudence. *See, e.g., Crandall v. State of Nev.*, 73 U.S. (6 Wall.) 35 (1867) (holding unconstitutional a state tax on persons leaving or passing through Nevada); *United States v. Guest*, 383 U.S. 745 (1966) (holding that the district court erred in dismissing part of an indictment concerning a private conspiracy to prevent African-American citizens from using state highways); *Shapiro v. Thompson*, 394 U.S. 618 (1969), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974) (striking down as unconstitutional state statutes that denied any welfare assistance whatsoever to persons residing in the state for less than one year). And, as plaintiff has indicated, the Court has relied on multiple provisions of the Constitution when recognizing this fundamental right. *See Crandall*, 73 U.S. (6 Wall.) 35 (recognizing the right to travel in the general principles of the Constitution instead of relying on a particular provision of the Constitution); *Shapiro*, 394 U.S. 618 (analyzing right to travel under the Equal Protection clause of the Fourteenth Amendment); *Saenz*, 526 U.S. at 498 ("The word 'travel' is not found in the text of the Constitution. Yet the 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence."). *See also* Christopher S. Maynard, *Nine-*

*Headed Caesar: The Supreme Court's Thumbs-Up Approach to the Right to Travel*, Case W. Reserve L.R., 51 CWRLR 297 (2000) (setting forth the history of the right as recognized by the Supreme Court).

Most recently, the Supreme Court addressed the right to travel in *Saenz v. Roe*, 526 U.S. at 498 (striking down a California statute that limited new residents' welfare benefits to the amount they would have received in the state of their prior residence).  In *Saenz*, the Court held that the constitutionally protected right to travel comprises at least three components:  the right to free interstate movement (i.e., the right to travel through a state), the right to travel to a state intending to return home (i.e., the right to visit another state), and the right of a newly-arrived citizen (i.e., the right to move to another state).  *Saenz*, 526 U.S. at 500–04.  But this case does not implicate any of those concerns.  Pollack does not complain that the AO violated her right to travel through or to visit the Washington, D.C. metropolitan area.  Nor does she complain that the AO's actions discriminated against her as a newly-arrived citizen of the District or its neighboring states – she still lives in Kentucky.  Rather, she complains that the AO violated her right to travel by refusing to consider her application for a job with the AO in Washington, D.C. because she is a resident of Kentucky.  Compl. ¶¶ 1, 4, 11.

So *Saenz* does not appear to apply, and plaintiff candidly acknowledges that she has found no case law addressing the right to travel in the factual context of this case.  Pl.'s Opp. at 8.  She argues nonetheless that the right to travel is "expansive" and includes "the right to be given equal consideration for possible employment by the federal government in localities to which she desires to relocate."  *Id.* at 9, 10.  In making this argument, she encourages the Court to analyze her claim "pursuant to other constitutional-right-to-travel cases."  *Id.* at 10.

It is true that in *Saenz,* the Supreme Court did not limit the components of the right to travel to the three examples it listed.  But after reviewing the specific constitutional provisions and authorities that plaintiff cites, and considering the "structure and purpose of the constitution as a whole," the Court finds that restricting the pool of applicants for a federal position to residents of nearby states does not violate any right found in the constitution.

### A.   Plaintiff Fails To State a Violation of the Article IV Privilege and Immunities Clause.

Article IV of the Constitution states that the "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. Art. IV, § 2, cl. 1. Plaintiff claims that this clause protects the right she asserts here because "to come to the seat of [the federal] government" is part of the fundamental right to travel protected by the clause.  Pl.'s Opp. at 11, citing *Slaughter House Cases*, 83 U.S. (16 Wall.) 36, 79 (1872).  Defendants argue first that the clause applies only to the states and does not apply to the federal government and its officers.  Defs.' Mem. at 19, citing *Frazier v. Heebe*, 788 F.2d 1049, 1052 (5th Cir. 1986), *rev'd*, 482 U.S. 641 (1987).  The case law in this Circuit confirms that the Privileges and Immunities Clause does not apply to the federal government.  *See Duehay v. Acacia Mut. Life Ins. Co.*, 105 F.2d 768, 775 (D.C. Cir. 1939) ("Section 2 of Article IV . . . is a limitation upon the powers of the states and in no way affects the powers of Congress over the territories and the District of Columbia.")

Plaintiff does not present authority to the contrary, but she maintains that she "reads the clear language of the Privileges and Immunities Clause of Article IV as applying to all government action – federal and state."  Pl.'s Opp. at 9 n.10.  The Court holds that the Privileges and Immunities Clause of Article IV applies only to the states and does not apply to the federal government, so plaintiff has not stated a claim under that clause.  But even if the clause did apply

to the federal government, the right that Pollack claims the AO violated is not a privilege or immunity protected by that clause.

The Supreme Court has explained that the privileges and immunities under Article IV "are only such as arise out of the nature and essential character of the national government, or are specifically granted or secured to all citizens or persons by the Constitution of the United States." *Twining v. State of N.J.*, 211 U.S. 78, 97 (1908), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964). These rights include the right to pass freely from state to state, the right to petition Congress for a redress of grievances, the right to vote for national officers, the right to enter the public lands, the right to be protected against violence while in the lawful custody of a United States marshal, and the right to inform U.S. authorities of violation of its laws. *Id.* Put another way, the privileges and immunities in Article IV are "[o]nly with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity." *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 383 (1978). Those privileges and immunities that do not bear on "the vitality of the Nation as a single entity" are not implicated.

Plaintiff claims the AO violated her right under the Article IV Privileges and Immunities Clause to "become a citizen of any state of the Union by a bona fide residence therein, with the same rights as other citizens of that State." Pl.'s Opp. at 11, citing *The Slaughter House Cases*, 83 U.S. (16 Wall.) at 80. But the AO's geographic limit on its applicant pool for a single job announcement does not prevent Pollack from moving to the Washington D.C. metropolitan area. She is free to relocate to the area.

Pollack also claims the AO violated her right to "come to the seat of government." Pl.'s Opp. at 11, citing *Slaughter House*, 83 U.S. (16 Wall.) at 80. Article IV protects those privileges and immunities that "arise out of the nature and essential character of the national government."

13

*Twining*, 211 U.S. at 97.  The right to come to the seat of government is one "to assert any claim he may have upon that government, or to transact any business he may have with it."  *Crandall*, 73 U.S. (6 Wall.) at 44.  According to plaintiff, the right to transact any business with the federal government includes the right to be considered for employment with the federal government. Pl.'s Opp. at 11.  But the Supreme Court has also made clear that the focus of this statement in the *Slaughter House* opinion "very clearly, was thus on impediments by the States on free movement by citizens."  *Guest*, 383 U.S. at 766.  "[T]his right is in its nature independent of the will of any State over whose soil he must pass in the exercise of it."  *Id.*, quoting *Crandall*, 73 U.S. (6 Wall.) at 44.  The AO's job announcement at issue here does not impede Pollack's right to interstate travel to conduct business with the federal government.  Although the residency requirement may prevent Pollack from being *eligible* for a particular AO job by virtue of her current state of residency, it does not prevent her from traveling to the Washington metropolitan area to become a resident and thereby *become eligible* for the specific job she seeks. Furthermore, the AO did not set a residency requirement for *all* of the attorney positions open in Washington, D.C.  As Pollack alleges in her complaint, she was eligible for and did apply for other attorney jobs within the AO.  Compl. ¶ 31; *see also* Reid Decl. ¶ 8.  The Court holds that plaintiff's right to relocate to the Washington metropolitan area is different from the right to be considered for particular AO jobs *before* she moves to Washington.  The right she asserts is the latter, and this is not a privilege or immunity under Article IV that bears on the vitality of the nation.

Moreover, although the Supreme Court has not addressed the question of whether the federal government can impose a residency requirement for certain federal jobs, it has upheld residency requirements imposed by state employers.  In *McCarthy v. Phila. Civil Serv. Comm'n*,

424 U.S. 645 (1976), the Court upheld a municipal regulation that required employees of the city to live in Philadelphia to maintain employment.   In that case, a 16-year veteran of the Philadelphia Fire Department was terminated because he moved his family out of the city to New Jersey.   *Id.* at 645.   The Supreme Court distinguished that regulation from the types of residency requirements that discriminate against new residents in violation of the Constitution. *Id.* at 646–47; *see also Shapiro*, 394 U.S. at 622–24 (state law imposing one-year waiting period to receive any welfare benefits); *Dunn v. Blumstein*, 405 U.S. 330, 334–35 (1973) (state law imposing one-year waiting period to vote); *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 252, 261–62 (1974) (state law requiring indigents to have resided in county for previous twelve months before receiving free non-emergency medical care); *Saenz*, 526 U.S.at 492–93 (state law limiting welfare benefits for new residents).   The Supreme Court held in *McCarthy* that this line of cases "did not question the validity of appropriately defined and uniformly applied bona fide residence requirements."   *McCarthy*, 424 U.S. at 647 (internal quotation marks and citations omitted).

Further, this case is distinguishable from *Hicklin v. Orbeck*, 437 U.S. 518 (1978), which struck down an Alaska statute that imposed a preference for hiring in-state residents over all out-of-state residents for jobs relating to the state's oil and gas pipelines because it violated the Article IV Privileges and Immunities Clause.   First, as stated above *supra*, unlike *Hicklin,* this case does not involve one state discriminating against the citizens of another, so it does not implicate the privileges and immunities protected under Article IV.   Further, although AO job announcement number 10-OFS-300782 limited eligible non-judiciary employees not claiming any preferences to applicants in Washington, D.C., Virginia, and Maryland, it considered current judiciary employees nationwide as eligible applicants.   So although *plaintiff* was ineligible for

this particular job as a Kentucky resident, the geographic limitation in the announcement did not limit eligibility as to all applicants outside the Washington, D.C. area.  Therefore, it does not bear upon "the vitality of the Nation as a single entity" and does not violate the Privileges and Immunities Clause of Article IV.  *Baldwin*, 436 U.S. at 383.

### B.  The AO's Limited Area of Consideration Does Not Violate the Equal Protection Clause.

Pollack claims the AO's area of consideration in its job announcement violates her right to equal protection under the Fifth and Fourteenth Amendments of the Constitution.  Compl. ¶ 1; Pl.'s Opp. at 9–10.  She asserts that the right to travel is a fundamental right requiring heightened judicial scrutiny.  *Id.* 8.  Defendants acknowledge that the Constitution's guarantee of equal protection binds the federal government.  Defs.' Mem. at 16, citing *Plyler v. Doe*, 457 U.S. 202, 216-18 (1982).  *See also Shapiro v. Thompson*, 394 U.S. 618 (1969) ("[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process.") (internal quotation marks and citations omitted).  But defendants assert that only rational basis review is warranted for plaintiff's claim, and that under that level of judicial scrutiny, the AO's area of consideration is valid.  Defs.' Mem. at 17–18; Defs.' Reply at 13–15.

The Equal Protection Clause of the Fourteenth Amendment states that, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV, § 1.  In an equal protection challenge, courts apply strict scrutiny when the challenged classification jeopardizes the exercise of a fundamental right or categorizes individuals on the basis of an inherently suspect characteristic.  *Banner v. United States*, 428 F.3d 303, 307 (D.C. Cir. 2005).  But where a statutory classification neither proceeds along suspect lines nor infringes fundamental constitutional rights, the provision must be upheld

against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Hettinga v. United States*, 677 F.3d 471, 478 (D.C. Cir. 2012).

Here, Pollack contends that strict scrutiny must be applied not because the AO relied on a suspect class in its job announcement, but because it violated a fundamental right. Pl.'s Opp. at 12. Although plaintiff is correct that the Supreme Court has applied strict scrutiny in analyzing other right to travel cases, *see*, e.g., *Shapiro*, 394 U.S. 618, *Mem'l Hosp.*, 415 U.S. 250; *Dunn*, 405 U.S. 330, the standard applies only when the right to travel has actually been implicated. Plaintiff has not established the necessary predicate.

The Supreme Court has held that a state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses any classification that serves to penalize the exercise of that right. *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986). The AO's geographic limitation in its job announcement does not actually deter travel. It does not impede or hinder anyone from making the trip to Washington; nor does it discourage visitors or new residents by suggesting that they would be unwelcome or subject to onerous requirements when they got here. Further, the limitation's primary objective is not to impede travel but to reduce administrative costs in reviewing applications. Reid Decl. ¶ 5. Finally, the AO's classification between residents of the Washington, D.C. area and non-residents of the area does not penalize Pollack for traveling. She is free to travel through, visit, or move to the Washington, D.C. area, and the job announcement did not apply different criteria to, or impose additional burdens on, new residents. Accordingly, the AO's geographic limitation in its job announcement does not implicate the fundamental right to travel.

Pollack argues that the AO's limitation burdens her ability to become a D.C. resident based on her current state of residence.  Pl.'s Opp. at 10, n.12.  She cites *Saenz v. Roe* for the proposition that an individual's prior state of residence has no relevance to a state's ability to burden that individual's right to travel.  *Id.*  But Pollack's argument takes the right to travel considered in *Saenz* a step further than the Supreme Court recognized.  There, the Court struck down a California statute that limited the welfare benefits of California residents who had lived in the state for less than a year to the welfare benefit amounts paid by the state of the plaintiffs' prior residency.  *Saenz*, 526 U.S. at 493, 498.  The Court ruled that this violated the Equal Protection Clause and the constitutional right to travel because it discriminated against newly-arrived residents in favor of residents living in the state for more than one year.  *Id.* at 504–505.  Thus, once a newly-arrived resident established bona fide residency in California, the state was obligated to pay that resident the same level of welfare benefits as a resident who had lived in the state for more than a year.  *Saenz* did not, however, hold that someone who was planning to move to California was entitled to receive California's welfare benefits or even to be considered for California's welfare benefits.  In other words, the state could not penalize someone for moving to California by treating them differently from those who had not travelled, but eligibility was still predicated upon residency.  It is the lack of a penalty that distinguishes this situation from the one presented in *Saenz.*

Here, Pollack argues the AO is deterring her from moving to the Washington, D.C. area by precluding her from being eligible for consideration for some, but not all, AO jobs located in the area while she resides in Kentucky.  But, again, the AO is not deterring her from moving.

Although Pollack may *prefer* to move to the Washington, D.C. area with a job in hand, nothing prevents her from moving to the area to try to secure a job, whether at the AO or anywhere else.[2]

The Supreme Court has applied strict scrutiny when a state conditions the receipt of certain government benefits on the duration of the recipient's residence in the state. *See Saenz,* 526 U.S. at 492–93, 504 (state law limiting welfare funds for new residents); *Mem'l Hosp.*, 415 U.S. at 252, 261–62 (state law requiring indigents to have resided in county for previous twelve months before receiving free non-emergency medical care); *Dunn*, 405 U.S. at 334–35 (one-year waiting period to vote); *Shapiro*, 394 U.S. at 629, 634 (state law imposing one-year waiting period to receive any welfare benefits). But when a government benefit is conditioned on factors other than duration of residency, rational basis review is the appropriate standard to determine whether the right to travel has been unconstitutionally burdened. *See, e.g., Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209 (3d Cir. 2013) (upholding a Pennsylvania school district's decision to give a teacher less than full credit for out-of-state teaching experience in calculating his salary). As the Third Circuit recently held, the "relevant distinction when evaluating a claim asserting a violation of the fundamental right to travel is between long-term and short-term residents, not current residents and *prospective* residents." *Id.* at 215. (emphasis in original). The Court agrees this is the relevant analysis and holds that the AO's job announcement does not distinguish between long-term and short-term residents, so rational basis review applies.

Under rational basis review, a challenged provision will be upheld if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). The rationale may be "based on

---

2       Moreover, the AO did not limit every job located in the Washington, D.C. area to candidates in the metropolitan area. Pollack applied for and was qualified for three other attorney positions within the AO, and her applications were referred to the selecting official. Reid Decl. ¶ 8.

rational speculation unsupported by evidence or empirical data" and "the burden is on the one attacking [the action] to negative every conceivable basis which might support it . . . whether or not the basis has a foundation in the record." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320–21 (1993) (internal quotation marks and citations omitted).   Here, the AO could rationally distinguish between individuals who live in the Washington, D.C. area and those who live outside it as a means to limit the applicant pool for some, but not all, AO jobs.   The AO had a rational interest in reducing its administrative costs by limiting the volume of applications it received for some vacancies.

Pollack does not dispute that reducing the financial burden associated with a larger applicant pool is a legitimate state purpose.   Rather, she argues that using the geographic limitation is not sufficiently tied to that purpose.   Pl.'s Opp. at 13–14.   She contends that a single application from Kentucky places no greater burden on the AO than does an additional application from Virginia, Maryland, or the District of Columbia.   *Id.* at 14.   But this argument suggests that a nationwide applicant pool would result in only a single additional application – hers – when, in fact, it would open the pool to multiple applications from individuals in 48 other states.   She also argues that a nationwide applicant pool is not a financial burden on the AO because the AO does not pay for an applicant's travel or moving expenses.   *Id.*   But that observation has nothing to do with the AO's stated justification.   It used the geographic limitation as a means to reduce the total number of applications it would be required to review and process, and that is a rational basis for the restriction even if other possible bases were

absent.  Accordingly, the Court rules that the AO's geographic limitation has a rational basis tied to a legitimate purpose and, therefore, does not violate the Equal Protection clause.[3]

### CONCLUSION

For the reasons set forth above, the Court will grant defendants' motion for summary judgment.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 6, 2013

---

3       Plaintiff also invokes all clauses of the Fourteenth Amendment, including the Citizenship Clause, Pl.'s Opp. at 9 n.9, but she only states that the Citizenship Clause "has . . . been recognized as relevant by *Saenz v. Roe*," without explaining how.  *Id.* at 17.  *Saenz* held that the Citizenship Clause expressly equates citizenship with residence, and that it does not allow for degrees of citizenship based on length of residence.  *Saenz*, 526 U.S. at 506.  But the AO's geographic limitation does not distinguish among applicants based on how long they have resided in the Washington, D.C. area.  Accordingly, Pollack's reference to the Citizenship Clause and the *Saenz* case do not support the conclusion that the AO's actions violate that clause of the Constitution either.

21